444 So.2d 325 (1983)
STATE of Louisiana
v.
Roy R. MORGAN.
No. 83 KA 0783.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
*326 Ossie Brown, Dist. Atty. by Thomas Damico, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Michele Fournet, Appellate Counsel, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before COVINGTON, COLE and SAVOIE, JJ.
COVINGTON, Judge.
Defendant, Roy R. Morgan, was convicted of aggravated rape, a violation of LSA-R.S. 14:42, and sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant now appeals on the basis of four assignments of error.

FACTS
About 3:30 a.m. on September 23, 1981, while the victim was asleep in bed with her four-year old child, a man broke into her apartment. The victim awoke to find a man, whom she had never seen before, standing by the side of her bed. She jumped up and tried to make it to the door, but he grabbed her and they struggled, his sunglasses coming off in the process. She was struck about the head. Her assailant also threatened to cut her throat with a knife if she did not submit to him. She struggled to get away, but the attacker forced her back on the bed and raped her. Both the (adjoining) bathroom light and the porch light were on and shone into the bedroom, so the victim was able to clearly see her attacker. She at last managed to get free, and ran to the front door of her apartment. The rapist chased her, and during the ensuing struggle broke through the glass on the side of the front door cutting his left arm, which left spots of blood. The victim managed to get the front door open, and the man ran out into the night. She went next door and called the police, who took her to the hospital, where she was examined. Later that same day, about 4:00 p.m., a police detective brought the victim a photographic line-up. The victim identified her assailant from the line-up as the defendant, Roy R. Morgan. Defendant was arrested and brought to trial.

ASSIGNMENTS OF ERROR
1. The trial court erred when it allowed irrelevant testimony by a state witness.
2. The trial court erred when it allowed the prosecutor to be a witness.
3. The trial court erred when it granted the prosecution the opportunity to impeach its own witness.
*327 4. The trial court erred when it allowed pre-trial identification photographs, one of which was of the appellant, to be entered as evidence.
Defendant argues in brief only Assignments of Error Nos. 2, 3, and 4, hence Assignment of Error No. 1 is considered abandoned. Rule 2-12.4, Uniform Rules Courts of Appeal, State of Louisiana.
ASSIGNMENTS OF ERROR NOS. 2 AND 3: IMPEACHMENT OF WITNESS:
Defendant contends that the trial court erred by overruling defendant's objection to the admission of irrelevant testimonial evidence by a state witness, arguing that the trial court's error resulted in substantial prejudice to defendant's rights in that it was damaging evidence considered by the judge in making his ruling to allow the state to attempt to impeach its own witness.
The irrelevant testimony complained of is as follows:
Q. All right. Has he ever expressed concern to you about that fact that he doesn't wish other people to know either he's homosexual or that he's had relations, homosexual relations with this man?
A. He expressed a fear of Roy Morgan. Uh, he didn't come right out and say he didn't want anybody to know that he was a homosexual, but he did talk to me and, uh, relay to me that word had gotten to him from Roy Morgan that, uh, if he ever got out that, uh, that Maurice Charles ... MR. JACKSON: Now ...
A. Would suffer.
The state called Maurice Carroll [Charles] to testify as to whether the defendant had ever gone to Carroll's apartment to engage in homosexual relations. Carroll responded in the negative. The jury was dismissed. The state pleaded surprise, and moved to be allowed to impeach its own witness on the ground that Carroll had previously told the prosecutor and his investigator that the defendant had gone to Carroll's apartment for the purpose of engaging in homosexual relations with him.
The trial judge stated that he would listen to the state's offer of proof of a prior inconsistent statement by Carroll before ruling whether the state would be allowed to impeach him in the jury's presence.
Whereupon, the state called its investigator to testify, out of the jury's presence, that Carroll had told him that the defendant had been to Carroll's apartment and had raped him [Carroll].
In overruling the defendant's objection on grounds of relevancy, the court explained the purpose of this offer of proof, out of the jury's presence, as follows:
THE COURT: All right, now, I'm trying to decide it out of the presence of the jury, and it goes to whether or not I'm going to let, uh, the State impeach its own witness. I have no fear of creating any error so long as I'm out of the presence of that jury, so I'm going to hear the whole thing, gentlemen. I'm going to let it all hang out so I can have it all there to help me decide it, and y'all can object all you want, and I'm still going to hear it.
After the investigator testified, the prosecutor also testified as to what Carroll had related to him concerning Carroll's homosexual encounter with the defendant. The jury was not present when the prosecutor testified. The trial judge overruled the defendant's objection.
LSA-R.S. 15:488 defines "surprise" and provides:
"Surprise" in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon some material matter against the party introducing him and in favor of the other side.
LSA-R.S. 15:493 provides:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether *328 he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such a statement, evidence that he did make it is admissible.
This testimony was heard by the court out of the jury's presence, while the judge was conducting a hearing on the question of the state's impeachment of its own witness. If evidence is relevant and otherwise admissible, the fact that it is prejudicial does not bar its admission. LSA-R.S. 15:441; State v. Chaney, 423 So.2d 1092 (La.1982).
The record before us reveals that the victim testified that her assailant said at the time of the rape that he had previously been in the apartment where the rape was committed and had committed sexual acts with the previous tenant. However, the previous tenant, Carroll, testified that the accused had "come to visit his other friend next door", that the accused had never done a homosexual act with him. At this point the jury was retired, and the state was allowed to present evidence to the judge alone, through the testimony of the state investigator and the prosecutor, to justify impeachment proceedings. The judge determined, out of the presence of the jury, that there was sufficient evidence to allow the state to impeach its own witness. When the jury was returned, the state continued questioning Carroll. The witness then admitted that the defendant had been in his apartment on a prior occasion, and that there had been homosexual activity between defendant and the witness. The state then chose not to impeach the witness in front of the jury; therefore, the need to establish a foundation never arose. Moreover, the hearing conducted by the trial judge out of the presence of the jury was not held to impeach the state's witness, but solely for the purpose of determining if the state had sufficient grounds for the impeachment of its own witness in front of the jury.
The testimony of the prosecutor to lay the foundation for impeachment was clearly relevant. Therefore, it was admissible under LSA-R.S. 15:441. Moreover, much discretion is afforded the trial court in determining issues of relevancy, and error in determining such issue is not reversible unless defendant demonstrates prejudice. LSA-C.Cr.P. art. 921; State v. Chaney. No such prejudice has been demonstrated.
There is no merit to these assignments of error.
ASSIGNMENT OF ERROR NO. 4PHOTOGRAPHIC LINEUP
The defendant contends in this assignment that the lineup procedure used in identifying him was impermissibly suggestive. As the United States Supreme Court said in Mason v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977):
... [R]eliability is the linchpin in determining the admissibility of identification testimony for both pre- and post- Stovall confrontations. The factors to be considered are set out in [Neil v.] Biggers, 409 U.S. [188] at 199-200, 93 S.Ct. [375] at 382 [34 L.Ed.2d 401]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
Applying this analysis to the instant case, the victim was with the man who raped her, for fifteen minutes. While he was in her bedroom, the light from the adjoining room was sufficient so that she had a clear view of her attacker. Being the victim, her attention was obviously fixed upon the perpetrator. The victim gave a description of the assailant to the *329 police shortly after the crime. At the photographic lineup which was held, the victim immediately identified the defendant as the rapist. Under such circumstances, the corrupting effect of the identification itself is minimal.
The defendant asserts in his brief that the defendant appeared in the photo lineup wearing a T-shirt and a bandana and that this was suggestive because none of the other five males depicted was wearing a bandana. The record shows that this statement is unfounded. The record reflects that six light-skinned black males were depicted on the inside of a manilla folder. All had mustaches, similar hair styles, and similar facial characteristics. Four of the six persons were wearing tank tops, one had on a T-shirt, and the other had on a jacket over a T-shirt and a bandana around his neck. The defendant was wearing a tank top. There are sufficient similarities to test the identification.
The victim described her assailant to the police as being a light-skinned black man with a small afro and a "slight" mustache. She also said that he was wearing a T-shirt and a bandana.
As this Court noted in State v. Marchese, 430 So.2d 1303 (La.App. 1st Cir.1983), in reviewing an identification procedure, the trial court must determine whether the procedure was so unnecessarily suggestive and so conducive to irreparable mistaken identification that the defendant was denied due process of law. In making its determination, the court must look at the totality of the circumstances surrounding the identification procedure.
We hold that the photographic lineup was properly admitted. The victim had ample opportunity to view her assailant in good light during the commission of the rape. Her prior description was sufficiently accurate, and she was able to immediately choose the defendant as her assailant from the lineup. The lineup was conducted on the same day as the offense, so that the length of time between the crime and the identification cannot be said to be inordinately long.
The fact that the victim was able, very shortly after the crime, to pick the defendant from the photographic lineup and identify him positively as the perpetrator is highly relevant, and clearly outweighs any possible prejudicial effect. State v. Williams, 402 So.2d 678 (La.1981).
We find that the photographic lineup in which the victim identified defendant's picture as that of her assailant was not impermissibly suggestive. As stated above, the record reveals that the victim had ample time to view her assailant in close proximity during the perpetration of the crime. The record also reveals that the victim was presented with the photo lineup on the same day that the offense occurred. These facts clearly demonstrate that the victim's identification was reliable. We find that the risk of misidentification was insubstantial and unlikely under these circumstances.
There is no merit to this assignment of error.

DECREE
For the above reasons, the conviction and sentence of Roy R. Morgan of the crime of aggravated rape are affirmed.
AFFIRMED.