**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Darrell G. MARTIN, Defendant and Appellant.**

**No. 16580.**

Supreme Court of South Dakota.

Argued Oct. 17, 1989.

Decided Dec. 6, 1989.

Jeff Masten, Lincoln County State's Atty., Canton, (Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief), for plaintiff and appellee.

Paul D. Stickney, Sioux Falls, for defendant and appellant.

MILLER, Justice.

In this appeal, we affirm convictions on four counts of second-degree manslaughter arising out of a motor vehicle collision and hold that (1) there was sufficient evidence to support the convictions; (2) the trial court properly instructed the jury on the statutory rules of the road; and (3) the motion for change of venue was properly denied.

## FACTS

During the late night hours of August 14, 1988, Kelly Kortan, her young daughters, Ashli and Jennifer, and her niece, Nicole Sayler, died. They had been passengers in a vehicle driven by Kelly's husband, Darrell Kortan, which struck a stalled garbage truck on Interstate 29 in Lincoln County, South Dakota. Darrell and another daughter, Stacie, survived the crash.

Earlier that day defendant/appellant, Darrell G. Martin, left Sioux Falls, South Dakota, traveling south on I–29. His vehicle broke down near the Vermillion, South Dakota, exit. He slept for awhile in the ditch but awoke that evening and hitched a ride north to Beresford, South Dakota. Near a local truck stop he "hot-wired" and stole a garbage truck. Although he was having some difficulties with the truck, he drove it onto I–29 and proceeded north. On various occasions the truck stalled,[1] but he was able to get it restarted. Ultimately, when the truck was again stalled, he noted that there was a fire in the rear, and being afraid that the gas

---

1. Apparently the main difficulty was occasioned by the engagement of micro lock brakes on the truck. These are hydraulic emergency brakes which are automatically engaged upon stepping on the brake pedal after the switch is turned on. After the accident, the truck's micro lock switch was in the "on" position.

tanks might explode, he grabbed his belongings and left the truck, which was protruding over eight feet into the twelve-foot traffic lane. Testimony indicated that at the time he left the truck its left rear taillight was on and the brakes were burning.

Martin testified that he observed the top of a building over a shelterbelt on the same side of the road as the truck and decided to get help.[2] (This testimony contradicted his previous statement to the sheriff that his only concern was to "get away" and that he did not want to be seen.) On the other side of the road was a large, occupied farm with a yard light.

Shortly thereafter, the vehicle driven by Darrell Kortan, hit the rear of the garbage truck. Kortan testified that his cruise control was set at 65 mph. He testified that he "glanced" at his wife and then when he looked back at the highway the only thing he could see was the garbage truck looming immediately in front of him.[3]

Martin was convicted by the jury on four counts of manslaughter in the second-degree. This appeal followed.

### ISSUES

### I

### WHETHER THE EVIDENCE WAS SUFFICIENT TO SUSTAIN A VERDICT OF GUILTY.

Martin contends that no evidence was introduced at trial showing that he intentionally, recklessly, or negligently left the truck on the highway. We first reject any argument made which would require the State to show that Martin had any specific intent to kill when he left the garbage truck on the highway. SDCL 22–16–20, under which Martin was charged, states:

Any *reckless* killing of one human being by the act or procurement of another

---

2. The buildings he observed were a farmstead which had been abandoned for approximately fifteen years.

3. The testimony of Highway Patrol Corporal Fratzke indicated that no skid marks were made by the Kortan vehicle prior to the collision.

which, under the provisions of this chapter, is neither murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree. Manslaughter in the second degree is a Class 4 felony. (Emphasis added.)

A killing under this statute must be "reckless." Reckless is defined at SDCL 22–1–2(1)(d):

The words 'reckless, recklessly' and all derivatives thereof, import a conscious and unjustifiable disregard of a substantial risk that the offender's conduct may cause a certain result or may be of a certain nature. A person is reckless with respect to circumstances when he consciously and unjustifiably disregards a substantial risk that such circumstances may exist[.]

Neither SDCL 22–16–20 nor SDCL 22–1–2(1)(d) require any specific intent as an element of second-degree manslaughter.

In *State v. Sabers*, 442 N.W.2d 259, 266 (S.D.1989), we stated that:

In determining the sufficiency of the evidence on appeal, the question is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making that determination, the Court will accept that evidence, and the most favorable inferences drawn therefrom, which will support the verdict. This determination " ' "may depend upon the difference between pure speculation and legitimate inference from proven facts." ' "

*State v. Sitting Crow*, 428 N.W.2d 268, 270 (S.D.1988) (citations omitted).

Martin's main attack on the sufficiency of the evidence is that there was no "reckless" killing. In addition, he argues that there was no evidence indicating that he "abandoned" the garbage truck. We disagree.

From that fact, Corporal Fratzke concluded that, "the driver hadn't perceived there was a danger and either hadn't made his reaction—or hadn't made any reaction, and then if he had perceived it he didn't have enough time to make his reaction."

State's evidence showed that Martin had hot-wired a garbage truck, which did not belong to him and drove it on an interstate highway. He continued to attempt to drive the truck when it was obvious that it was not operating properly. When the truck finally came to rest, it was parked so that it protruded in excess of eight feet into the driving lane. He did not stay with the vehicle in an attempt to warn other motorists. Further, depending on which of his versions is to be believed, he either (1) went into a corn field and hid, or (2) rather than going to the nearest, obviously inhabited dwelling to seek assistance, Martin went to a dark, uninhabited building.[4] In doing so, he left a large garbage truck, with one taillight functioning, occupying two-thirds of the main lane of traffic, in the dark, on an interstate highway, with nothing in its immediate area to warn the traveling public of its presence. (We observe from photographs in evidence that the Kortan vehicle was virtually decapitated by the collision but the garbage truck does not show visual signs of damage. This evidence is further proof of the substantial risk of danger a stationary garbage truck presents on the road.)

The evidence was sufficient for the jury to determine that Martin disregarded the substantial risk the presence of the garbage truck created by leaving it improperly parked and improperly lit on the interstate highway and by abandoning the scene. Interestingly, it is clear from the evidence that Martin made no contact with anyone, prior to his arrest, regarding the truck on the interstate. In fact, after he left the truck and heard an explosion in the same area, he did not go back to the truck to see if anyone had been injured. He testified that he merely continued to walk down the road. These facts support the conclusion that he "abandoned" the truck.

**4.** Martin testified that he did not see the well-lighted farm on the opposite side of the interstate but could see the top of a building where no lights were visible over a shelterbelt.

**5.** We note that a killing within the contemplation of manslaughter in the second degree does not have to be a *probable* result of the defendant's acts as in manslaughter in the first de-

The evidence was therefore sufficient for the jury to determine that Martin's acts were "reckless" as contemplated by the statute.[5] SDCL 22-1-2(1)(d); SDCL 22-16-20.

## II

WHETHER THE TRIAL COURT PROPERLY INSTRUCTED THE JURY ON A MOTORIST'S DUTY WHILE STOPPING ON A PUBLIC HIGHWAY.

Martin contends that the trial court erred in giving three instructions regarding certain statutory rules of the road involving parked and stopped vehicles:

### INSTRUCTION NO. 26

The jury is instructed that a statute of this state declares that in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear or unobstructed width of not less than twenty feet upon the main-traveled portion of such highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway.

To find beyond a reasonable doubt that the defendant violated this statute, you may consider such violation along with all other evidence, facts and circumstances in determining whether or not the conduct and acts of the defendant were reckless as that term has hereinbefore been defined by this court.

### INSTRUCTION NO. 27

The jury is instructed that whenever a vehicle is parked or stopped upon a highway, whether attended or unattended,

gree. *See* SDCL 22-16-15. The death which occurs need only be a *possibility* of the defendant's reckless conduct as evidenced by the legislature's use of the term "may" within the definition of "reckless" as that term is used in SDCL 22-16-20, manslaughter in the second degree. *See State v. Seidschlaw,* 304 N.W.2d 102 (S.D. 1981) and *State v. Bates,* 65 S.D. 105, 271 N.W. 765 (1937).

during the period from a half hour after sunset to a half hour before sunrise, there shall be displayed upon such vehicle one or more lamps projecting a white or amber light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle and projecting a red light visible under like conditions from a distance of five hundred feet to the rear.

If you find beyond a reasonable doubt that the defendant violated this statute, you may consider such violation along with all other evidence, facts and circumstances in determining whether or not conduct and acts of the defendant were reckless as has hereinbefore been defined by this court.

### INSTRUCTION NO. 28

The jury is instructed that a statute of this state requires that every operator of a motor truck shall immediately, upon bringing his vehicle to a stop upon the traveled portion of any public highway at any time after sunset and before sunrise, or when stopping at any time after sunrise and before sunset if such vehicle is likely to remain upon the traveled portion of the highway after sunset and before sunrise, to place three flares or red electric lights or red reflectors or emergency reflective triangles on the roadway. If traffic on the roadway moves upon a one-way roadway or divided highway, one of these devises shall be placed at least one hundred feet to the rear and one at least two hundred feet to the rear, and one along side the stopped vehicle. The flares, red electric lights, red reflectors or emergency reflective triangles shall be of such type of construction as will furnish continuous light for a period of sunset to sunrise at all times of the year. This statute does not apply if the stop is momentary in obedience to an intersection stop light or conforming to the movement of a line of traffic or within the corporate limits of a municipality.

If you find beyond a reasonable doubt that defendant violated this statute, you may consider such violation along with all other evidence, facts and circumstanc-

es in determining whether or not the conduct and acts of the defendant were reckless as has hereinbefore been defined by this court.

Instruction No. 26 is derived from SDCL 32–30–2; Instruction No. 27 from SDCL 32–17–27; and Instruction No. 28 from SDCL 32–17–29.

It is Martin's contention that these instructions would have been proper in a situation he had "control" over. He argues that he had no control over the ability to comply with these traffic regulations after the vehicle had been disabled. He also contends that the difficulty in reading these instructions as a whole is that they change the burden of proof from a general intent crime to one of strict liability.

■ It is not error for a trial court to instruct on the rules of the road if it is justified by the facts of the case as developed by the evidence. *State v. Bennett*, 326 N.W.2d 720, 722 (S.D.1982). Jury instructions are to be considered as a whole, and if instructions when so read correctly state the law and inform the jury, they are sufficient. *State v. Fox*, 313 N.W.2d 38 (S.D.1981).

■ We first reject Martin's argument that he had "no control" over the situation of the truck becoming disabled. Martin had *exclusive control* over the decision to take the truck initially. Martin, and only Martin, had control over the type of safety precautions to be taken to warn other motorists after the truck became immobile. Implicit in Martin's argument is that the truck controlled the series of events which led up to the collision with the Kortan vehicle. That argument, in our view, lacks logic.

■ We next address Martin's allegation that the trial court's instructions changed the burden of proof. The relevant portion of Instructions 26, 27 and 28 states: "If you find beyond a reasonable doubt that the defendant violated this statute, you *may* consider such violation *along with all other evidence, facts and circumstances* in determining whether or not the conduct

and acts of the defendant were reckless as that term has hereinbefore been defined by this court." (Emphasis added.)

This instruction allowed the jury to exercise their discretion in deciding how much weight, if any, should be given the finding of a violation of these statutes if the jury determined the statutes were in fact violated. It also permitted the jury to decide that such violations were not dispositive of the issue of whether or not Martin was "reckless." Moreover, if the jury did decide the statutes were violated, they still, in accordance with the instructions, had to consider all the other "evidence, facts and circumstances" before they could properly decide the issue of "recklessness."

We therefore hold that the trial court did not err by giving these instructions.

### III

### WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A CHANGE OF VENUE.

Martin contends that every prospective juror in this case had heard of the facts of the case prior to trial. He contends that prejudice existed in the minds of the jurors sufficient to raise a reasonable apprehension that Martin could not receive a fair and impartial trial.

■ Whether a change of venue should be granted is a matter within the sound discretion of the trial court, and we will not disturb the trial court's decision unless there is an abuse of discretion. *State v. Weatherford,* 416 N.W.2d 47 (S.D.1987). *See also* SDCL 15–5–11 and 23A–17–5.

■ The test for change of venue is prejudice in the minds of the county residents sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial. *State v. Lohnes,* 432 N.W.2d 77 (S.D.1988); *State v. Brandenburg,* 344 N.W.2d 702 (S.D.1984). We presume the defendant can receive a fair trial in the county where the offense was committed. *Lohnes, supra; Weatherford, supra.* Pretrial publicity alone is not enough to deny a fair trial or, to warrant a change of venue. *Weatherford, supra; State v. Luna,* 378 N.W.2d 229 (S.D.1985). Courts have acknowledged that prospective jurors will have some knowledge of pending criminal cases by the pervasive influence of the communications media. *Weatherford, supra.*

■ There must be additional evidence tending to show that such publicity was so prejudicial as to prevent the defendant from receiving a fair and impartial trial in the county. *Id.; Brandenburg, supra; United States v. Buttorff,* 572 F.2d 619 (8th Cir.1978) *cert. denied* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978). Martin simply has not met his burden to overcome the presumption of a fair trial nor has he produced evidence to provide a sufficient basis for a change of venue.

Affirmed.

All the Justices concur.