**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Edward BRADDOCK, Defendant and Appellant.**

**No. 16617.**

Supreme Court of South Dakota.

Argued Nov. 29, 1989.

Decided March 14, 1990.

Kenneth R. Dewell, Hot Springs, for defendant and appellant.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

SABERS, Justice.

Edward L. Braddock appeals his conviction for the murder of Douglas Cramer.

### Facts

On the night of October 11, 1988, Cramer went to the Stockman's Bar in Edgemont, South Dakota. When the bar owner saw Cramer, she called Braddock in Morrill, Nebraska and informed him of that fact in accordance with his prior request.

Braddock arrived at the bar later that evening and joined Cramer and several other individuals. Later, the group left the bar and went to Cramer's motel room in Edgemont. Sometime later, the group decided to return to the bar to play foosball. Braddock and Cramer left the motel together in Braddock's truck and were seen driving out of town in the direction of the city dump.

Approximately forty-five minutes later, Braddock returned to the bar alone. He offered Fred Carstens a ride home and Carstens accepted. According to Carstens' testimony, after arriving at his home, Braddock asked him to get rid of a gun for him and gave him an AK–47 assault rifle. Carstens noticed the gun barrel was still warm, so he asked Braddock what he had done with the rifle. Carstens testified that Braddock replied: "I killed [him]; teach [him] to owe me money."

Early the following morning, Cramer's body was found at the Edgemont city dump. He had been shot eight times. Later that morning, Carstens was interrogated by Edgemont Police Chief Ron Berens. Carstens gave Berens the gun that he received from Braddock. That evening, at the request of Sheriff Leo Bray and Special Agent Robert Overturf, Carstens called Braddock. The conversation was recorded by law enforcement officials with Carstens' permission. Carstens claimed he was not given any promises or threatened in any way prior to this conversation. In the conversation, Braddock acknowledged that he gave Carstens the gun and instructed him to destroy the gun. Braddock also indicated that what he said when he gave Carstens the gun was true.

The next day, October 13, 1988, Sheriff Bray and two other law enforcement officials traveled to the Sioux County Nebraska sheriff's office to interview Braddock about the death of Cramer. Before the questioning began, Braddock was informed of his *Miranda* rights and given a written statement of those rights. He signed a waiver of his rights, and answered the questions of law enforcement officials. Eventually, Braddock became uncomfortable with the questioning and asked for an attorney. The questioning stopped immediately. After the questioning stopped, Braddock was arrested for murder. Sheriff Bray had a warrant for Braddock's arrest before the questioning began, but Braddock was unaware of this fact.

Braddock was indicted on one count of first-degree murder. He pled not guilty. He filed a pretrial motion to suppress the telephone conversation between himself and Carstens and the statements he made during the interrogation on October 13. The motion was denied. A jury trial was held in February 1989. Braddock was found guilty and sentenced to life imprisonment.

Braddock appeals,[1] claiming the court erred in denying his motion to suppress the telephone conversation and his statements from the October 13 interrogation. He further claims the court improperly restricted third-party perpetrator evidence. We affirm.

1. *Suppression of telephone conversation.*

Braddock claims the court erred in admitting the phone conversation between himself and Carstens because the State failed to comply with SDCL ch. 23A–35A. Chapter 23A–35A regulates the interception of wire or oral communications and provides that the State may intercept such a communication only upon authorization of a circuit judge.

This court has ruled that when one person in a face-to-face conversation consents to the recording of the conversation, the communication does not fall within the statutory definition of an oral communication and SDCL ch. 23A–35A does not apply.[2] *State v. Woods*, 361 N.W.2d 620 (S.D. 1985) (*Woods I*); *see also State v. Iverson*, 364 N.W.2d 518 (S.D.1985). The conversation between Braddock and Carstens was not face-to-face. It took place on the phone, which places it within the statutory definition of wire communication.[3]

---

1. Braddock has new counsel on appeal.

2. "Oral Communication," any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation. SDCL 23A–35A–1(10).

3. "Wire Communication," any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the trans-

Braddock claims the one-person consent exemption of SDCL ch. 23A–35A, as established in *Woods I,* applies only to face-to-face oral communications and not to wire communications. Braddock asserts that the ruling in *Woods I* was based upon that portion of the statutory definition of oral communication requiring such a communication to carry with it a justified expectation of privacy. The statutory definition of wire communication does not include that requirement. As a result, Braddock argues, this conversation falls within the statutory definition of wire communication and outside the one-person consent rule. Without the one-person consent rule, court approval was necessary before the State could record the conversation.

■ Braddock reads the holding in *Woods I* too narrowly. Although the expectation of privacy played a role in the decision, it was only one of "two rationales for admitting" the recorded conversation. *Woods I, supra* at 621. *Woods I* determined that the "statute should be construed to allow one-party consent recordings without prior court authorization" because SDCL 23A–35A–20 exempts from criminal liability a person who records a communication with the consent of one of the participants. *Id.* at 622. We conclude that the consent of one party to the recording of a communication takes that communication out of the scope of SDCL ch. 23A–35A, whether the communication is oral or by wire. This position is consistent with the law in the federal courts and in other jurisdictions. *E.g., United States v. Finley,* 571 F.2d 430 (8th Cir.1978), *cert. denied,* 436 U.S. 907, 98 S.Ct. 2240, 56 L.Ed.2d 406 (1978); *Sullivan v. Gray,* 117 Mich.App. 476, 324 N.W.2d 58 (1982); *State v. Reid,* 394 N.W.2d 399 (Iowa 1986).

## 2. *Suppression of interrogation statements.*

Braddock claims the trial court erred in failing to suppress the statements he made during the October 13 interrogation. He claims the statements should have been suppressed because there was an ineffec-

tive waiver of his *Miranda* rights and the statements were not voluntary.

■ The State has the burden of proving beyond a reasonable doubt that a defendant waived his constitutional rights and freely and voluntarily made any statements. *See State v. Gregg,* 405 N.W.2d 49, 52 (S.D.1987); *State v. West,* 344 N.W.2d 502, 504 (S.D.1984). If the trial court finds that the defendant's rights have been waived and any statements made were voluntary, that finding must be upheld by this court unless it is clearly erroneous. *State v. Woods,* 374 N.W.2d 92, 98 (S.D.1985) (*Woods II*); *Gregg, supra* at 52. *But see State v. Jenner,* 451 N.W.2d 710, 724 (S.D. 1990) (Morgan and Sabers, JJ., dissenting).

■ A defendant may waive his *Miranda* rights provided "the waiver [is] made voluntarily, knowingly, and intelligently." *West, supra* at 504. To determine whether a waiver is effective, we must consider the totality of the circumstances. *State v. Bult,* 351 N.W.2d 731 (S.D.1984). That is, "we must look to the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *West, supra* at 504. This approach was further explained in *Bult, supra* at 735:

[C]onsidering appellant's age, experience, education, background, and intelligence, did he understand the *Miranda* warnings and the nature of his constitutional rights and did he knowingly and intelligently forego his right to remain silent and to have the assistance of counsel?

■ Braddock claims the trial court erred in finding that he waived his *Miranda* rights. After being asked if he understood his rights when they were given to him, the record indicates he stated "I don't know." Considered in isolation, this statement may raise some doubt about the effectiveness of Braddock's waiver of his rights. However, when considered within the totality of the circumstances, Braddock's waiver is supported by other evidence that he knowingly and intelligently

mission of interstate or foreign communica-

tions. SDCL 23A–35A–1(15).

waived his rights. Sheriff Bray testified that Braddock's statement "I don't know" was actually an indication of his reluctance to sign things. Furthermore, Braddock ultimately signed the waiver of his rights without any other indication that he did not understand what he was doing. We also note that Braddock had previous experience with the criminal justice system, making it more likely that he was aware of his rights. Under the circumstances, we are unable to conclude that the trial court was clearly erroneous in finding that Braddock knowingly and intelligently waived his rights. We reach the same conclusion if we consider the matter on full review.

■■■■ Braddock further argues that the failure of law enforcement officials to inform him of the outstanding warrant for his arrest rendered the statements involuntary and inadmissible. A statement must be voluntary to be admissible as evidence. *Gregg, supra* at 52. Whether a statement was voluntarily made is also assessed under the totality of the surrounding circumstances. *State v. Hartley,* 326 N.W.2d 226, 230 (S.D.1982). Braddock argues that he was unduly prejudiced by the delayed execution of the arrest warrant contrary to *State v. Rogers,* 70 Wis.2d 160, 233 N.W.2d 480 (1975), *People v. Jackson,* 21 Mich.App. 377, 175 N.W.2d 891 (1970), and *People v. Hernandez,* 15 Mich.App. 141, 170 N.W.2d 851 (1968). In considering Jackson's allegations that the police withheld information of the victim's death until various statements had been obtained, the *Jackson* court stated that it was "another factor ... to consider" in determining whether such statements are voluntary. *Jackson, supra,* 21 Mich.App. at 380, 175 N.W.2d at 892 n. 3.

■■■■ We conclude that failure to inform an individual of an outstanding warrant for arrest is one factor to be considered when assessing the voluntariness of a statement, but does not automatically render a statement involuntary. *Gregg, supra* at 53. In its findings of fact and conclusions of law, the trial court considered that Braddock was unaware of the outstanding warrant for his arrest, but·

nevertheless concluded that Braddock's statements were still voluntarily made. Without any other indication that Braddock's statements were not voluntary, we are unable to conclude the trial court's determination was clearly erroneous.

Braddock was informed of his *Miranda* rights and he signed a statement that he understood those rights. He was not coerced or threatened or enticed into making any of his statements, nor was he subjected to any physical punishment or abuse. Moreover, when he requested an attorney, the questioning ceased immediately. Under these circumstances, we have no basis for overruling the decision of the trial court.

3. *Third-party perpetrator evidence.*

■■■■ Braddock claims the trial court improperly limited the introduction of evidence that someone else committed the crime. The rule regulating the admission of such evidence, known as the third-party perpetrator rule, was set forth in *State v. Luna,* 378 N.W.2d 229 (S.D.1985). *Luna* directs the trial court to balance the importance of the evidence for the defendant against the State's interest in preserving orderly trials and excluding unreliable or prejudicial evidence. *Id.* at 234. Third-party perpetrator evidence is not automatically suspect, but is not to be admitted if the State's interest in exclusion of the evidence outweighs its probative value.

■■■ The decision in *Luna* was based upon SDCL 19–12–3 which provides that relevant evidence may be excluded only if its probative value is substantially outweighed by the harm likely to result from its admission. In *State v. Hawkins,* 260 N.W.2d 150 (Minn.1977), the Minnesota Supreme Court stated:

> Thus, where the issue is whether in fact the defendant killed the deceased, evidence tending to prove that another person did the killing is admissible. The purpose of evidence to show that another committed the homicide is not to prove the guilt of the other person, but to generate a reasonable doubt of the guilt of the defendant. Proper foundation must be laid for the admission of such

evidence, however, to avoid the consideration of matters collateral to the crime.... That is, evidence tending to incriminate another is inadmissible in the absence of proof of facts to connect that person with the crime. This requirement avoids the use of bare suspicion and safeguards the third person from indiscriminate use of past differences with the deceased.

*Id.* at 158–9 (citations and footnote omitted). The third-party perpetrator rule cannot be used to prevent the defendant from establishing his defense, or deny him the right to a fair jury trial.

We further note that the foundation to be laid for the admission of the evidence need not be extensive. As explained in *State v. Denny*, 120 Wis.2d 614, 624, 357 N.W.2d 12, 17 (Ct.App.1984):

> [W]here it is shown that a third person not only had the motive and opportunity to commit the crime but also was placed in such proximity to the crime as to show he may have been the guilty party, the evidence would be admissible.

A stricter standard is inappropriate because, as Wigmore states:

> [I]f the evidence is really of no appreciable value, no harm is done in admitting it; while if it is in truth calculated to cause the jury to doubt, the Court should not attempt to decide for the jury that this doubt is purely speculative and fantastic, but should afford the accused every opportunity to create this doubt.

*Perry v. Watts*, 520 F.Supp., 550, 557 (N.D. Cal.1981) (quoting 1 Wigmore, *Evidence* § 139 at 573 (19__)), *aff'd*, *Perry v. Rushen*, 713 F.2d 1447 (9th Cir.1983), *cert. denied*, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). Therefore, evidence that a third person in proximity of a crime had the motive and opportunity to commit the crime is admissible.

Braddock claims the trial court should have allowed him to introduce evidence that a third person may have murdered Cramer. In his brief, Braddock lists thirteen items of evidence that he claims indicates someone else committed the crime. Despite the pretrial ruling limiting the introduction of such evidence, almost all of that evidence did come before the jury in some manner. The few exceptions are not substantial enough to warrant reversal of his conviction. While there is some indication the trial court may have unduly restricted the presentation of other third-party perpetrator evidence, Braddock never established a record of such evidence by making an offer of proof. Without an offer of proof, Braddock is foreclosed from arguing this point on appeal. SDCL 19–9–3; *State v. Jones*, 416 N.W.2d 875 (S.D. 1987). As a result, we are unable to conclude the trial court improperly excluded any significant evidence showing a third person in proximity to the murder with a motive and opportunity to commit the crime.

We affirm.

All the Justices concur.