1997 SD 54

**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Jose Angel GARZA, aka Mario Santiago,
Defendant and Appellant.**

No. 19332.

Supreme Court of South Dakota.

Argued Oct. 22, 1996.

Decided May 14, 1997.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for Plaintiff and Appellee.

Rhonda C. Lockwood, Minnehaha County Public Defender, Sioux Falls, for Defendant and Appellant.

AMUNDSON, Justice.

[¶ 1] Jose Garza (Garza) appeals convictions of murder in the first degree (felony murder) and arson in the first degree. He claims error by the trial court in not disqualifying certain jurors, denying his motion for change of venue, disallowing third-party perpetrator evidence, and denying his motion to suppress the photographic identification lineup. We affirm.

## FACTUAL BACKGROUND

[¶ 2] At approximately 9:00 a.m. on the morning of February 24, 1995, Jose Sanchez (Sanchez) hosted a party at his apartment located at 231 South Spring in Sioux Falls, South Dakota. Throughout the morning and early afternoon hours, a large amount of alcohol was consumed by the occupants and guests. Garza arrived at Sanchez' apartment around 4:00 p.m. and found the majority of the participants intoxicated. Garza consumed alcohol with the other guests after his arrival.

[¶ 3] Later, Ansellmo Montinegro (Montinegro) and Garza had an altercation. After Montinegro broke the strings of a guitar, Garza grabbed it and broke it further. Another participant at the party attempted to stop Garza and a further altercation ensued. Next, the evidence showed that Garza went to the stove, turned on the gas, lit all four burners, and threatened he could burn down the house. Also, Garza was observed putting his lighter up to the fuse box in the apartment, but the fuse box door was closed by another person at the party to deter this act.

[¶ 4] At approximately 9:30 p.m., Garza left the party. Garza was later identified as having purchased forty-five cents worth of gasoline at a nearby 7–11 store at 11:00 p.m. Within twenty minutes of his purchase, the apartment building at 231 South Spring was on fire. All of the occupants escaped the burning building, except for John Doe, who died of carboxyhemoglobin poisoning.[1]

[¶ 5] Thereafter, charges were filed against Garza. After a jury trial, Garza was convicted of murder in the first degree and arson in the first degree. He was then sentenced to life imprisonment on each count, to be concurrently served. He appeals, raising the following issues:

I.  Did the trial court abuse its discretion when it denied Garza's challenge to excuse certain jurors for cause or for additional peremptory challenges?

II.  Did the trial court abuse its discretion when it denied Garza's motion for a change of venue?

III.  Did the trial court err when it denied the presentation of third-party perpetrator evidence?

IV.  Did the trial court abuse its discretion when it found the photographic identification lineup procedure was not impermissibly suggestive?

## DECISION

[¶ 6] I.  **Excusing Jurors for Cause and Peremptory Challenges.**

[¶ 7] Garza asserts the trial court erred by denying his challenges for cause as to six potential jurors and two jurors who actually sat on the jury. He maintains the trial court erroneously denied the challenges for cause after each of the eight individuals merely "recite[d] the mantra that they could follow the judge's instructions." Despite these statements, Garza claims there was evidence of verbal as well as written bias by each of these potential jurors. Further, he claims he was prejudiced because the denial of his challenges for cause forced him to exhaust all twenty peremptory challenges which would have been used on other jurors. (A subsequent request for additional peremptory challenges was denied.)

[¶ 8] The trial court has broad discretion in determining juror qualification. *State v. Hansen*, 407 N.W.2d 217, 220 (S.D. 1987). Actual, material prejudice resulting from the trial court's refusal to excuse a juror for cause must be shown for a reversal. *State v. Blue Thunder*, 466 N.W.2d 613, 620 (S.D.1991).

[¶ 9] Although seven of these jurors heard information regarding this case from the news media, the record reflects they were able to " 'set aside preconceptions and render an impartial verdict.' " *Hansen*, 407 N.W.2d at 220 (quoting *State v. Muetze*, 368 N.W.2d 575, 585 (S.D.1985)). Potential juror Pederson initially stated that she would not be a fair juror due to the knowledge she had of this case via the media. After an explanation was given to Pederson regarding the possibility of inaccurate reports from the media, Pederson stated that she would be able to

---

1.  John Doe, the victim, has never been identified.

decide the case based on the evidence presented and make a fair decision.

[¶ 10] Potential juror Whiting simply heard information of the case on the news. After further inquiry, he stated that he could hear the evidence without thinking of the information he acquired. Similarly, juror Blocher mentioned that he heard a report on the news regarding this case. He too stated that the report would not affect his view of the evidence presented at trial. Potential juror Manke also heard information regarding the case on the news, but she stated that she could listen to both sides because "you can't always believe everything you see and read."

[¶ 11] Garza contends that because potential juror Yesda's response on a questionnaire included the conclusion that Garza was guilty, he should have been excused for cause. During voir dire, however, Yesda stated that he could put everything he heard from the media aside and decide the case only on the evidence presented in court. Juror Graff also mentioned that she heard information about the case on the radio, but had not come to any conclusions. She further stated that the news report would not affect her view of the evidence presented.

[¶ 12] Potential juror Hanson noted that she heard a report on the news concerning a case in which the defendant pled guilty and then wished to change his plea. With that information in mind, she stated during voir dire that if Garza pled guilty he probably was guilty. After further discussion, however, Hanson said the guilty plea would not enter into her mind or affect her judgment as she heard the evidence in this case.

[¶ 13] Garza asserts that because potential juror Anderson admitted his "problems with 'illegals,'" he would not be fair and impartial. However, Anderson testified that he could decide the case based on the evidence presented at trial, and his feelings would not impede his ability to find Garza not guilty.

[¶ 14] The United States and South Dakota Constitutions guarantee trial by an impartial jury. U.S. Const.Amend. VI; S.D.Const. Art. VI, § 7; SDCL 23A–16–3; *State v. Etzkorn,* 1996 SD 99, ¶ 8, 552 N.W.2d 824, 828; *Hansen,* 407 N.W.2d at 220; *Muetze,* 368 N.W.2d at 585; *State v. Volk,* 331 N.W.2d 67, 70 (S.D.1983). However, there is no specific test to be applied when determining a juror's impartiality. *Etzkorn,* 1996 SD 99, at ¶ 8, 552 N.W.2d at 828; *Hansen,* 407 N.W.2d at 220. The established guidance is that "[a] potential juror should be excused for cause if that juror is unable to 'set aside preconceptions and render an impartial verdict.'" *Id.* (quoting *Muetze,* 368 N.W.2d at 585); *see also* 2 W. LaFave & J. Israel, *Criminal Procedure,* § 21.3(c) (1984). Furthermore, to determine whether a juror should be disqualified, the voir dire examination must be judged in its entirety. *Etzkorn,* 1996 SD 99, at ¶ 9, 552 N.W.2d at 828; *State v. Flack,* 77 S.D. 176, 180, 89 N.W.2d 30, 32 (1958). This court has repeatedly stated that "[s]ingle isolated responses are not determinative." *Id.*

[¶ 15] The answers of each person disclose they would be able to "set aside preconceptions and render an impartial verdict." *Hansen,* 407 N.W.2d at 220. Furthermore, only two of the questionable jurors, Blocher and Graff, actually sat on the jury and rendered a guilty verdict. Arguing prejudice existed, Garza cites *Flack,* 77 S.D. at 180, 89 N.W.2d at 32, stating that prejudice is presumed when a disqualified juror remains as a juror after a challenge for cause is denied. In *Flack,* however, the denial of a challenge for cause was affirmed because "[n]one of the jurors appeared to have a fixed and unqualified opinion about the case; none had talked to anyone who purported to know what the facts of the case were; and none expressed any bias or prejudice against the defendant personally." *Id.* Similarly, neither Blocher nor Graff had set opinions about this case due to the media. They simply acquired general information and stated that they could hear the evidence in this case without being affected by outside information. Therefore, there was no prejudice.

[¶ 16] Furthermore, Garza failed to demonstrate that any of these eight jurors did not understand all three of the following: "(1) State had to prove guilt beyond a reasonable doubt; (2) a defendant is presumed innocent until proven guilty; and (3) a determination of guilt must be based only upon evidence

and testimony introduced during trial." *Hansen,* 407 N.W.2d at 220. Applying these factors in *Etzkorn,* we held that two of the potential jurors should have been disqualified because the voir dire evinced their inability to set aside guilt preconceptions. 1996 SD 99, at ¶ 13, 552 N.W.2d at 828–29. However, the testimony in *Etzkorn* is clearly distinguishable from the voir dire testimony involved in this case. Here, not one of the jurors ever stated they could not presume Garza's innocence; whereas, in *Etzkorn,* a review of the record indicated that a potential juror stated twice she could not presume innocence. *Id.* at ¶¶ 10–11, 552 N.W.2d at 828. We hold there was no abuse of discretion by the trial court when it refused to excuse these jurors for cause. Garza has not shown any prejudice in this case.

## [¶ 17] II. Change of Venue.

[¶ 18] On the first day of the trial, Garza made a motion for change of venue, contending he was unable to obtain a fair and impartial trial because the trial court "ignore[d] not only the pretrial publicity, but also the evidence of prejudice and bias presented by the jurors." The motion was denied.

[¶ 19] To change venue, there must be " 'prejudice in the minds of county residents sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial.' " *Boykin v. Leapley,* 471 N.W.2d 165, 168 (S.D.1991) (quoting *State v. Martin,* 449 N.W.2d 29, 34 (S.D. 1989) (citing *State v. Lohnes,* 432 N.W.2d 77, 83 (S.D.1988); *State v. Brandenburg,* 344 N.W.2d 702, 704 (S.D.1984))). The presumption is that Garza can receive a fair trial in the county where the offense was committed. *Id.; State v. Weatherford,* 416 N.W.2d 47, 50 (S.D.1987). There must be a clear abuse of discretion by the trial court in order to disturb a decision on a motion for change of venue. *Boykin,* 471 N.W.2d at 167; *Weatherford,* 416 N.W.2d at 50.

[¶ 20] As stated in *Boykin,* " '[p]retrial publicity alone is not enough to deny a fair trial or, to warrant a change of venue.' " 471 N.W.2d at 168 (quoting *Martin,* 449 N.W.2d at 34 (citing *Weatherford,* 416 N.W.2d at 50–51; *State v. Luna,* 378 N.W.2d 229, 236 (S.D.1985))). It has long been recognized that potential jurors will have some knowledge of pending criminal cases by the media coverage. *Id.* (quoting *Martin,* 449 N.W.2d at 34 (citing *Weatherford,* 416 N.W.2d at 51)). Therefore, additional evidence demonstrating that " 'such publicity was so prejudicial as to prevent the defendant from receiving a fair and impartial trial in the county' " must be shown. *Id.* (quoting *Martin,* 449 N.W.2d at 34 (citing *Weatherford,* 416 N.W.2d at 51; *Brandenburg,* 344 N.W.2d at 704; *United States v. Buttorff,* 572 F.2d 619, 627 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978))).

[¶ 21] Additionally, this court has recognized that "voir dire examination is the better forum for ascertaining the existence of hostility towards the accused." *Id.* (citing *State v. Reiman,* 284 N.W.2d 860, 867 (S.D. 1979)). In this case, the voir dire examination reveals that pretrial publicity did not prevent Garza from receiving a fair trial in Minnehaha County. A large part of the examination revolved around the issue of pretrial publicity. In addition, each individual juror completed a questionnaire regarding his or her knowledge of the case. All the potential jurors were examined concerning pretrial publicity and prejudice. The selected jurors indicated they could set aside any information they heard from the media and decide the case solely upon the evidence presented during the trial.

[¶ 22] Garza failed to demonstrate he could not receive a fair trial in Minnehaha County. The trial court did not abuse its discretion in denying this late motion for change of venue.

## [¶ 23] III. Third-party Perpetrator Evidence.

[¶ 24] Garza asserts that two witnesses, John Sharpfish (Sharpfish) and Jose Sanchez (Sanchez), should have been allowed to testify regarding the possibility of a third-party perpetrator.

[¶ 25] This court established the rule regulating the admission of such evidence in *Luna,* 378 N.W.2d at 232–34. Generally, the trial court must "balance the im-

portance of the evidence for the defendant against the State's interest in preserving orderly trials and excluding unreliable or prejudicial evidence." *State v. Braddock*, 452 N.W.2d 785, 789 (S.D.1990); *see also State v. Larson*, 512 N.W.2d 732, 739 (S.D.1994). Furthermore, "[t]hird-party perpetrator evidence is not automatically suspect, but is not to be admitted if the State's interest and exclusion of the evidence outweighs its probative value." *Braddock*, 452 N.W.2d at 789.

■ [¶ 26] When evidence exists that demonstrates a third person was in the proximity of a crime, and had the motive and opportunity to commit the crime, the evidence is admissible. *Larson*, 512 N.W.2d at 739 (citing *Braddock*, 452 N.W.2d at 789). Garza represented to the trial court that Sharpfish would testify that he accompanied an alleged third-party perpetrator on the night of the fatal fire at 231 South Spring and had information regarding a third-party perpetrator's involvement with the fire. Based on this representation, Sharpfish was permitted to testify.

■ [¶ 27] Sharpfish initially contended he was in Sioux Falls on the night of the fire; then, while testifying before the jury, he maintained he was in Rapid City during the period of time that the fire occurred. After his examination was reopened, Sharpfish testified that East River Legal Services would

know where he was on the night of the fire (which was found to be false). After retaking the stand yet again, Sharpfish stated that he was in Rapid City on the night of the fire. The trial court granted State's motion to strike this testimony, since Sharpfish could not testify accurately as to his whereabouts on the night of the fatal fire.[2] Without knowing where he was himself, Sharpfish certainly cannot place a third-party perpetrator in the proximity of the fire. His testimony, therefore, is "highly unreliable and of little probative value." *Luna*, 378 N.W.2d at 234. We hold the trial court did not err in granting State's motion to strike Sharpfish's testimony as to third-party perpetrator evidence.

■ [¶ 28] Garza further asserts that Sanchez (who also lived at 231 South Spring) would have testified that the alleged third-party perpetrator was located within the proximity of the fire and had a motive and an opportunity.[3] Sanchez claims he saw this claimed third-party perpetrator within eight blocks of 231 South Spring about three hours before the fire, that he was wearing a black jacket, and that animosity existed between Sanchez and him. The trial court ruled that factual evidence such as an eyewitness that places a third-party perpetrator at the fire is admissible, but character evidence of a prior dispute between Sanchez and the alleged third-party perpetrator is not admissible.[4]

2. The trial court specifically noted that Garza was given ample opportunity to question Sharpfish, which eventually demonstrated that Sharpfish had no idea where he was on the night of the fire. The trial court proceeded to give a lengthy explanation to the jury concerning the difference between character evidence and third party perpetrator evidence, thereby explaining the reason for Sharpfish's testimony being stricken.

3. Sanchez was called as a witness by State, but Garza was not allowed to inquire as to third-party perpetrator evidence on cross-examination.

4. The trial court's statements were as follows:
   See, the problem with the third party perpetrator versus what's happening in this case is this. All these third party perpetrator cases, what they try to do is they try to bring somebody in from the outside, plop them into the middle of the trial and say this person had opportunity, motive, and was at the scene and so that they want to say, you know, our person didn't do it. Our client didn't do it. We have got to distin-

guish that very clearly from somebody who is a fact witness who sees something that is occurring at the time. Now, if the defense can come up with some theory, not theory, Mr. Nelson, can come up say with an eyewitness who saw the fire and saw a person of this description at the fire, that's a fact statement.... So, I see no problem with that kind of testimony coming in. What I see the danger, Mr. DerHagopian, is unless you can identify that person somehow back, I am not going to let you get into all the prior fight and motive issues because then you are going back and making a specific as to that person, and all this is, is third party perpetrator evidence you are trying to get in, unless you can put him at the scene, is you have character evidence—what I mean is that you are saying there had been a rumble or dispute between them in the past, his character was such that he was then going to commit a crime in the future, and character evidence in this regard can't be used. You can certainly put on your own eyewitness to say that I saw some person who was at the scene and this person

Apparently Garza determined that Sanchez' testimony was nothing more than character evidence, because no subsequent offer of proof was made. Therefore, the trial court had no opportunity to rule on the admission of Sanchez' testimony, specifically regarding the placement of a third-party perpetrator at the scene of the fire. As we stated in *Hedges v. Hedges*, "An offer of proof is a condition precedent to having this court pass upon an allegedly erroneous ruling on the exclusion of evidence." 87 S.D. 425, 432, 209 N.W.2d 660, 664 (1973).

[¶ 29] There was no offer showing facts connecting this alleged third party perpetrator to the proximity of the crime at the time of this fire, and therefore obviously no foundation for admission of such evidence. Thus, the trial court did not abuse its discretion in excluding Sanchez' testimony by adhering to our previous holding wherein we excluded "unreliable or prejudicial evidence," and emphasized the State's strong interest in "preserving orderly trials[.]" *Braddock*, 452 N.W.2d at 789.

### [¶ 30] IV. Photographic Identification Lineup Procedure.

[¶ 31] Garza contends that the trial court erred in denying his motion to suppress the photographic identification lineup. The identifying witness provided investigating officers with information that the individual purchasing gasoline at the 7–11 store was wearing a white shirt. Garza therefore contends that a photographic lineup with only Garza pictured in a white shirt is impermissibly suggestive.

[¶ 32] In-court identifications are inadmissible when they are derived from an impermissibly suggestive photographic identification lineup procedure which has a substantial likelihood of resulting in irreparable misidentification. *State v. Abdo*, 518 N.W.2d 223, 225 (S.D.1994); *State v. Iron Thunder*, 272 N.W.2d 299, 301 (S.D.1978); *State v. Sahlie*, 90 S.D. 682, 688, 245 N.W.2d 476, 479 (1976); *State v. Barcley*, 88 S.D. 584, 587, 225 N.W.2d 875, 877 (1975). A two-prong test for photographic lineups was laid out in *Abdo*: "(1) Was the lineup impermissibly suggestive, and (2) if so, was the subsequent in-court identification tainted?" 518 N.W.2d at 225 (citing *Iron Thunder*, 272 N.W.2d at 301). "The burden of establishing the impermissible suggestiveness of the photographic lineup is on the party seeking to suppress the evidence." *Id.* at 225–26. The trial court will not be reversed unless an abuse of discretion is shown. *Id.* at 226.

[¶ 33] As to the first prong, suggestiveness of the photographic lineup, the trial court found "[t]he photographic lineup was not impermissibly suggestive as to result in a substantial likelihood of a misidentification[,]" noting that "[n]othing in the photographic lineup unduly suggested one individuals [sic] over the others[,]" and "the identification was based upon the witnesses [sic] memory and recollection." Numerous other courts have reached the same conclusion under similar circumstances. *See Harris v. Clusen*, 487 F.Supp. 616, 619 (E.D.Wis.1980) (holding the photo identification was sufficiently reliable although the defendant was the only person pictured in a suit and the robbery was committed by a person in a suit); *Moore v. State*, 304 Ark. 558, 803 S.W.2d 552, 554 (1991) (holding it was not impermissibly suggestive to have the defendant pictured in clothing similar to that described by the witness); *LaBlanc v. People*, 177 Colo. 250, 493 P.2d 1089, 1091–92 (1972) (holding that a lineup with the defendant in jail clothes and all others in street clothes was not so suggestive as to violate due process); *People v. Johnson*, 43 Ill.App.3d 649, 2 Ill.Dec. 174, 181, 357 N.E.2d 151, 158 (1976) (holding that, although the defendant was the only person without a shirt in the photo lineup, it was not unduly suggestive); *State v. Morgan*, 444 So.2d 325, 329 (La.Ct.App.1983) (holding that it was not impermissibly suggestive that the

---

doesn't match up with my client. That's permissible. I have no problem with this. I am not going to let you get back into the motive of the prior dispute with this.

Counsel for Garza continued to argue that Sanchez could place a person within the proximity of the crime. The court ultimately found:

I think I have got a problem with trying to use it, so I am not going to let you tie it in but witnesses can testify about who they saw at the scene. That's fact evidence not to be confused with third party perpetrator evidence and you can take whatever argument you want from that and carry it forward.

defendant was the only person in the photo lineup wearing a bandana, when the crime was committed by a person wearing a bandana); *State v. White*, 307 N.C. 42, 296 S.E.2d 267, 269–70 (1982) (holding that, although the assailant was described as wearing a white shirt, it was not impermissibly suggestive to have the defendant be the only person pictured in a white shirt); *compare People v. Carter*, 46 Cal.App.3d 260, 120 Cal.Rptr. 181, 185–86 (1975) (holding the photographic lineup violated due process because the *sole* item of identification by the witness was a turtleneck sweater, yet the defendant was the only one pictured wearing a sweater).

[¶ 34] Even if the photographic lineup had been impermissibly suggestive, the subsequent in-court identification was not tainted, thereby meeting the second prong of the *Abdo* test. 518 N.W.2d at 225. In order to determine whether the identification was tainted, we examined the totality of the circumstances. *See State v. Jaeb*, 442 N.W.2d 463, 465–66 (S.D.1989) (citing *State v. Phinney*, 348 N.W.2d 466, 468 (S.D.1984)). According to *Neil v. Biggers*, five factors are applied to this analysis. 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). These factors include:

1) Length of time between crime and confrontation;

2) Opportunity of the witness to observe the accused at the time in question;

3) Level of certainty exhibited;

4) Witness' degree of attention; and

5) Accuracy of prior description.

*Jaeb*, 442 N.W.2d at 466. Applying these factors to this case, we note the following facts supporting the reliability of the in-court identification: The witness, a 7–11 clerk, identified Garza within one week of his purchasing gasoline in a milk container at the 7–11 store where she worked; the witness viewed Garza in a well-lit store for around five minutes; the witness identified Garza within five seconds at the photographic lineup, and has always maintained her certainty; the witness' attention was drawn to Garza after he purchased forty-five cents of gasoline and attempted to purchase a lighter (to which the witness responded, "are you nuts?"); the witness described Garza as a Hispanic male, approximately five feet four inches tall, medium build, with average length hair, and Garza fits this description very closely; and another witness also identified Garza as being at the 7–11 on the date and at the time in question.

[¶ 35] We hold that the trial court did not abuse its discretion in denying the motion to suppress the photographic identification lineup. Accordingly, we affirm.

[¶ 36] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

