Jimmy Lee **BOYKIN**, Appellant,

v.

Walter **LEAPLEY**, Warden of the South Dakota State Penitentiary, Appellee.

No. 17214.

Supreme Court of South Dakota.

Argued Feb. 11, 1991.

Decided May 29, 1991.

Michael S. McKnight of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for appellant.

Roger A. Tellinghuisen, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for appellee.

ZINTER, Circuit Judge.

Jimmy Lee Boykin (Boykin) appeals from the dismissal of his petition for habeas corpus. We affirm.

On July 21, 1986, a Minnehaha County grand jury returned an indictment against Boykin and Howard Joseph Adams (Adams) as a result of the homicide of DeWayne Jensen. The indictment charged Boykin and Adams with: Count I, murder in the first degree (SDCL 22-16-4); Count II, murder in the first degree committed in the course of another felony (SDCL 22-16-4); Count III, robbery in the first degree (SDCL 22-30-1 and SDCL 22-30-6); and Count IV, kidnapping (SDCL 22-19-1). Adams was tried first. On December 17, 1986, a Minnehaha County jury found Adams guilty of Counts I, III and IV. *See, State v. Adams,* 418 N.W.2d 618 (S.D.1988).

Boykin was represented by two court-appointed attorneys throughout his pretrial, trial and direct appeal proceedings.[1] Boykin's trial attorneys moved for a change of venue because of extensive media coverage of the homicide and Adams' trial. An opinion survey and two jury questionnaires were prepared. One questionnaire elicited extensive information concerning each prospective juror's knowledge of the pretrial publicity and their opinions and biases regarding Boykin. The opinion survey sought the same information from 601 Minnehaha County residents. The trial judge considered the opinion survey and questionnaires and denied the motion for change of venue. The trial judge noted, however, that if voir dire revealed a fair jury would not be obtained, a change of venue could be granted. A Minnehaha County jury was empaneled. On January 30, 1987, Boykin was found guilty of Counts I, III and IV and not guilty on Count II of the indictment. Boykin's convictions were affirmed by this court on direct appeal. *See, State v. Boykin,* 432 N.W.2d 60 (S.D.1988).

Boykin subsequently commenced this habeas corpus proceeding to have his conviction vacated. The habeas court entered findings of fact, conclusions of law and a judgment which dismissed Boykin's petition. Boykin raises three issues on appeal.

I

Boykin first contends that he was denied his constitutional right to effective assist-

---

1. The habeas court appointed a new attorney to represent Boykin in this proceeding.

ance of counsel in his direct appeal because his attorneys failed to include the transcript of the jury voir dire, the opinion survey and the jury questionnaires in the appellate record. In his direct appeal we upheld the trial court's denial of the motion for change of venue stating:

'Pretrial publicity alone is not enough to deny [a defendant] a fair trial or, in other words, to warrant a change of venue.' [citations omitted] Qualified jurors may have some knowledge of the facts and issues involved without burdening a defendant's Sixth Amendment rights. [citations omitted] Boykin has not shown unfair press coverage, and failed to transcribe the voir dire of potential jurors. A public opinion survey authorized by the trial court was also not preserved in this record by Boykin. As voir dire is the better forum for ascertaining the existence of hostility towards the accused [citation omitted] and no record exists for us to review, we cannot conclude that Boykin has suffered any prejudice. Appellant, as the party claiming error, had the responsibility to insure that a record was made. [citation omitted] The settled record is the sole evidence of the circuit court's proceedings and, when confronted with an incomplete record, our presumption is that the circuit court acted properly.

*Boykin,* 432 N.W.2d at 68.

■ At the hearing on Boykin's petition, the habeas court took judicial notice of the files in Boykin's prior criminal proceeding. The court also supplemented the record with the results of the opinion survey and the transcript of the jury voir dire.[2] The habeas court reviewed the supplemented trial record and concluded that, assuming Boykin's attorneys' appellate performance was deficient, Boykin was not prejudiced because there was no reasonable probability that the venue issue would have been decided differently had this court been able to review the omitted evidence in Boykin's direct appeal. We agree.

■ In analyzing ineffective assistance of counsel claims we have adopted the two part standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Gross v. Solem,* 446 N.W.2d 49 (S.D.1989); *Roden v. Solem,* 431 N.W.2d 665 (S.D.1988); *Luna v. Solem,* 411 N.W.2d 656 (S.D.1987); *Jones v. State,* 353 N.W.2d 781 (S.D.1984).

To reverse a conviction on ineffective assistance grounds, a defendant must show: 1) that counsel's performance was deficient; and 2) that the deficient performance prejudiced the defense. The test for prejudice is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Gross v. Solem, supra* at 51. This two part standard applies whether the deficient acts occurred at trial or on appeal. *Anderson v. State,* 373 N.W.2d 438 (S.D.1985). Since a defendant must satisfy both standards, we need not determine whether counsels' performance was deficient before examining the prejudice suffered by the defendant. *Strickland, supra.*

We first proceed to determine whether Boykin suffered any prejudice as a result of his appellate attorneys' performance. In Boykin's direct appeal, we affirmed the trial court's denial of the motion for change of venue because the opinion survey and the transcript of voir dire were not in the record. Those materials have now been included in the record. Our review of the omitted materials leads us to again conclude that the trial court acted properly in denying the motion.

It is well established that a decision on a motion for change of venue is within the sound discretion of the trial court, and this court will not disturb that decision unless there is a clear abuse of discretion. *State v. Weatherford,* 416 N.W.2d 47 (S.D.1987). In *State v. Martin,* 449 N.W.2d 29, 34 (S.D.1989) we stated that:

2. Although the completed jury questionnaires have not been located and are not a part of this record, blank copies of the questionnaires are included. The omission of the actual jury ques-

tionnaires is of no consequence because they were used by the trial court and counsel during voir dire and we have a full transcript of the voir dire.

The test for change of venue is prejudice in the minds of the county residents sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial. *State v. Lohnes*, 432 N.W.2d 77 (S.D.1988); *State v. Brandenburg*, 344 N.W.2d 702 (S.D.1984). We presume the defendant can receive a fair trial in the county where the offense was committed. *Lohnes, supra; Weatherford, supra*. Pretrial publicity alone is not enough to deny a fair trial or, to warrant a change of venue. *Weatherford, supra; State v. Luna*, 378 N.W.2d 229 (S.D.1985). Courts have acknowledged that prospective jurors will have some knowledge of pending criminal cases by the pervasive influence of the communications media. *Weatherford, supra*.

There must be additional evidence tending to show that such publicity was so prejudicial as to prevent the defendant from receiving a fair and impartial trial in the county. *Id; Brandenburg, supra; United States v. Buttorff*, 572 F.2d 619 (8th Cir.1978) *cert. denied* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978). We have also stated that voir dire examination is the better forum for ascertaining the existence of hostility towards the accused. *State v. Reiman*, 284 N.W.2d 860 (S.D.1979); *Boykin, supra*.

Here, the voir dire examination does not reveal that pretrial publicity prevented Boykin from receiving a fair trial in Minnehaha County. The court and counsel used the detailed juror questionnaires to individually examine each potential juror concerning pretrial publicity and prejudice. Of sixty-five potential jurors, ten were challenged for cause because of preconceived opinions or impressions of Boykin's guilt. Eight of those challenged were excused and the remaining two jurors said they could set aside any preconceived impressions and fairly decide the case. Boykin's attorneys also exercised twenty peremptory challenges, and they did not indicate to the trial court that there were other particular jurors remaining that counsel desired to remove by the exercise of peremptory challenges. Of the jurors actually selected, several had heard very little about the matter and no one indicated they had formed any opinion of Boykin's guilt. All the jurors selected indicated they could set aside any matters they had heard in the media and decide the case solely upon the evidence presented in the trial.

Despite the voir dire record, Boykin argues that the opinion survey established that he was unable to get a fair trial in Minnehaha County. The opinion survey, however, only concluded that it would be "difficult" to get a fair trial in Minnehaha County. The survey indicated that Boykin would need the ability to challenge twenty-five percent of the prospective jurors to get a fair trial. Here, eight of sixty-five prospective jurors were removed for cause because of preconceived opinions and twenty additional jurors were removed by peremptory challenge. Boykin was given more challenges than the opinion survey indicated were necessary for a fair trial.

After a review of the supplemented record, we conclude that Boykin suffered no prejudice because this court would not have decided the venue issue differently in Boykin's direct appeal had Boykin's appellate attorneys included the opinion survey and jury voir dire. The habeas court's denial of Boykin's ineffective assistance of counsel claim is affirmed.

## II

Boykin next contends that his due process rights were violated because it was disclosed in Boykin's trial that Adams had been convicted of the murder. Generally, a conviction of another involved in the same criminal enterprise is not admissible for the purpose of establishing guilt. *See, State v. Brown*, 285 N.W.2d 848 (S.D.1979); *State v. Bachelor*, 67 S.D. 259, 291 N.W. 738 (1940). The habeas court, however, found that Boykin's trial attorneys intentionally introduced Adams' conviction as a trial tactic.

In *State v. Brown, supra* we held that if a co-defendant's guilt is introduced into evidence at the insistence of the defendant as a matter of trial tactics, the defendant may not allege error. Here, the habeas court found that it was a defense trial tactic to inform the jury that Adams had been convicted of the offense in an attempt

to convince the jury that Adams, not Boykin, was responsible for the offenses. Boykin does not challenge that finding. Although this defense tactic was not ultimately successful, it is not reversible error.. *Brown, supra.*

■ Even if defense counsels' trial tactic could arguably be characterized as ineffective assistance of counsel, Boykin has failed to establish prejudice. Prior to voir dire the trial judge informed the jury of Adams' conviction and told them:

Now, the fact that Mr. Adams was convicted of those offenses can play no part in your determination as to the guilt or innocence of this defendant. Just because one person has been convicted of a crime does not mean that another person under the law is or is not guilty of those same offenses. More than one person can commit a crime but because one individual has committed a crime does not mean that the other person is guilty of that crime.... The dispute is who did it. And the fact that one person has been convicted of those offenses can play no part in your determination as to whether or not this defendant committed those offenses.... This defendant is entitled to a jury of his peers to determine whether or not the State has proven his guilt beyond a reasonable doubt independent of the conviction of Mr. Adams.

The trial judge also admonished the jury on occasion during the trial and gave a written jury instruction that Adams' conviction was not to be considered as evidence in determining the guilt of Boykin.

■ Boykin argues it is unreasonable to assume that the jury would follow those instructions. We must, however, presume that the jury followed the limiting instructions. *State v. Reddington,* 80 S.D. 390, 125 N.W.2d 58 (1963); *State v. No Heart,* 353 N.W.2d 43 (S.D.1984). We are not persuaded that Boykin was prejudiced.

### III

■ Boykin finally contends that he is entitled to habeas corpus relief because Count II of the indictment did not charge an offense as a matter of law.[3] We need not consider the merits of Boykin's contention because even assuming he is correct, the error was harmless. Boykin was acquitted of Count II. Furthermore, the state did not introduce any evidence under Count II that it could not have introduced under the remaining counts. We are convinced beyond a reasonable doubt that the alleged defect did not contribute to his conviction.

For all the foregoing reasons, the habeas court is affirmed.

MILLER, C.J., HENDERSON and SABERS, JJ., and HERTZ, Acting J., concur.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted did not participate.

ZINTER, Circuit Judge, for WUEST, J., disqualified.

---

**3.** Although Count II charged that Boykin committed felony-murder under SDCL 22–16–4, it alleged Boykin committed the act "without any design to effect death." SDCL 22–16–4 does not require proof of that element.