2002 SD 4

**Duane Anthony ICE, Petitioner and Appellant,**

v.

**Douglas WEBER, Warden of the South Dakota State Penitentiary, Respondent and Appellee.**

**Nos. 21992, 21996.**

Supreme Court of South Dakota.

Argued Nov. 14, 2001.

Decided Jan. 2, 2002.

Jeremiah J. Davis, Pennington County Public Defender's Office, Rapid City, South Dakota, Attorney for petitioner and appellant.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, South Dakota, Attorneys for respondent and appellee.

SABERS, Justice.

[¶ 1.] Duane Ice (Ice) appeals the denial of habeas corpus relief based on ineffective assistance of counsel. The habeas court held that counsel's performance was not deficient. We affirm.

## FACTS

[¶ 2.] Ice, a Native American, was charged with aggravated assault stemming from an altercation with Scott Pooler (Pooler), a white male, on September 21, 1997. The altercation between the two men began as a fistfight and escalated into a more violent confrontation involving a knife. As a result of two stab wounds received during the fight, Pooler suffered a collapsed lung. In addition, a witness who attempted to break up the fight received a stab wound to his back. Ice obtained a Rapid City attorney to represent him. A jury trial was held May 26—29, 1998. On May 29, the jury convicted Ice of aggravated assault resulting in serious bodily injury.

[¶ 3.] During the voir dire stage of Ice's trial, his counsel did not question the jury on issues of racial prejudice. Following the conclusion of voir dire, and during a recess in the proceedings, the bailiff overheard one of the prospective jurors make a racially motivated remark. The bailiff brought this remark to the court's attention and the court allowed the prosecution and defense the opportunity to reopen voir dire. The prosecution questioned several of the prospective jurors about their beliefs concerning racial issues. He then posed a follow-up question to the entire pool on whether racial prejudice would affect their ability to be fair and impartial. Ice's trial counsel then addressed the issue of racial prejudice with one of the prospective jurors originally questioned by the prosecution and she was removed for cause.

[¶ 4.] In its case-in-chief, the prosecution called Jerred Murner (Murner) as a witness. Murner was present during the altercation between Ice and his victim and attempted to break up the fight between the two men. Murner testified that he received a stab wound in the back during the altercation. Ice was not charged with assaulting Murner. During closing argument, the prosecution used Murner's testimony about the altercation to bolster its argument that Ice assaulted Pooler. Ice's counsel did not object to Murner's testimony during trial, nor did he object to the prosecution's closing argument.

[¶ 5.] Ice did not testify at trial. Throughout the course of trial preparation and the trial itself, Ice and his counsel discussed the benefits and detriments of Ice testifying. Ice wanted the opportunity to express his innocence to the jury, while his trial counsel believed it could be harmful for Ice to testify. Ultimately, a decision was reached that Ice would not testify.

[¶ 6.] At the conclusion of the three-day trial, the jury began its deliberations

at about 4:55 p.m. After approximately six hours of deliberations, the foreperson of the jury sent a note to the trial court judge asking whether it could consider a lesser charge of simple assault. The jury's request was denied. The foreperson then sent another note indicating that the jury reached a verdict of not guilty on the count of aggravated assault with a deadly weapon, but was deadlocked on the count of aggravated assault resulting in serious bodily injury. The trial court asked the jury to continue its deliberations and this request was agreed to by Ice's trial counsel. Sometime after midnight, the jury returned a verdict of guilty on aggravated assault.

[¶ 7.] On June 2, 1998, Ice pleaded guilty to a charge of being an habitual offender. Ice was sentenced to serve nine to twelve years in the South Dakota penitentiary. On August 5, 1998, Ice appealed his conviction to this Court and we affirmed on April 13, 1999. On February 14, 2001, Ice filed a petition for writ of habeas corpus which was denied April 10, 2001. On May 23, 2001, Ice filed a motion for issuance of a certificate of probable cause which was denied. On June 12, 2001, Justice Sabers issued a certificate of probable cause. Ice then filed a notice of appeal raising issues of ineffective assistance of counsel. The State responded with a notice of review on the basis that a single justice could not sign a certificate of probable cause.

### STANDARD OF REVIEW

[¶ 8.] It is well settled that "[s]tatutory interpretation presents a question of law reviewable de novo." *Zoss v. Schaefers,* 1999 SD 105, ¶ 6, 598 N.W.2d 550, 552 (citing *Satellite Cable Srvs. v. Northern Electric,* 1998 SD 67, ¶ 5, 581 N.W.2d 478, 480).

[¶ 9.] When reviewing the decision of a habeas court, this Court has recognized:

Habeas corpus is not a substitute for direct review. Because habeas corpus is a collateral attack upon a final judgment, our scope of review is limited. On habeas review, the petitioner has the initial burden of proof. We review the habeas court's factual findings under the clearly erroneous standard.

*Sund v. Weber,* 1998 SD 123, ¶ 12, 588 N.W.2d 223, 225 (citing *Lodermeier v. Class,* 1996 SD 134, ¶ 3, 555 N.W.2d 618, 621–22) (additional citations omitted).

[¶ 10.] This Court's standard for reviewing claims of ineffective assistance of counsel is also well established.

Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial. This [C]ourt, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel.

*Rodriguez v. Weber,* 2000 SD 128, ¶ 28, 617 N.W.2d 132, 142 (citations omitted).

[¶ 11.] **1. WHETHER, AFTER A CIRCUIT COURT JUDGE HAS REFUSED TO ISSUE A CERTIFICATE OF PROBABLE CAUSE, A SINGLE SUPREME COURT JUSTICE IS AUTHORIZED UNDER SDCL 21–27–18.1 TO ISSUE A CERTIFICATE OF PROBABLE CAUSE.**

[¶ 12.] The State contends that the issuance of a certificate of probable cause under SDCL 21–27–18.1 requires ap-

proval by a majority of this Court, and not a single justice. SDCL 21–27–18.1 provides, in relevant part:

> A *final judgment or order entered under this chapter may not be reviewed by the Supreme Court of this state on appeal unless the circuit judge who renders the judgment or a justice of the Supreme Court issues a certificate of probable cause* that an appealable issue exists. A motion seeking issuance of a certificate of probable cause shall be filed within thirty days from the date the final judgment or order is entered. The issuance or refusal to issue a certificate of probable cause is not appealable. However, *a party may, upon the circuit court judge's refusal to issue a certificate of probable cause, file a separate motion for issuance of a certificate of probable cause with the Supreme Court* within fifteen days of the entry of the circuit court judge's refusal.

(emphasis added).

[¶ 13.] This statute was amended in 1989. Prior to the 1989 amendment, the fourth sentence stated that "a party ... may, upon a circuit judge's refusal to issue a certificate of probable cause, file a separate motion for issuance of a certificate of probable cause with *a justice of the Supreme Court* ...." SDCL 21–27–18.1 (emphasis added). The statute currently provides that "a party may, upon the circuit court judge's refusal to issue a certificate of probable cause, file a separate motion for issuance of a certificate of probable cause with *the Supreme Court* ...." *Id.* (emphasis added). The State argues that the 1989 amendment removed from a single justice the authority to issue a certificate of probable cause.

[¶ 14.] Ice argues that the amendment from filing "with a justice of the Supreme Court" to filing "with the Supreme Court" was simply to cause the filing to be with the Clerk of the Supreme Court (in Pierre) rather than with the individual Justices throughout the state. We agree. The 1989 amendment refers only to the filing of a motion for a certificate of probable cause and not the issuance of the certificate. The first sentence regarding the issuance of the certificate of probable cause did not change. The 1989 amendment required that the motion for issuance of a certificate of probable cause be filed with the Supreme Court, rather than an individual justice. This change was made for administrative convenience. Accordingly, the amendment changed the person with whom the motion must be filed, not the person who has authority to issue the certificate.

[¶ 15.] **2. WHETHER ICE, A NATIVE AMERICAN, WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO RAISE THE ISSUE OF RACIAL PREJUDICE DURING VOIR DIRE.**

[¶ 16.] In reviewing ineffective assistance of counsel claims, this Court has adopted the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See Sund*, 1998 SD 123 at ¶ 13, 588 N.W.2d at 225 (recognizing this Court's adoption of the *Strickland* standard); *Jones v. State*, 353 N.W.2d 781 (S.D.1984) (adopting the two-pronged test of *Strickland* for analyzing claims of ineffective assistance of counsel). Ice must show "1) that counsel's performance was deficient; and 2) that the deficient performance prejudiced the defense. The test for prejudice is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Boykin v. Leapley*, 471 N.W.2d 165, 167 (S.D.1991) (citation omitted). Furthermore, counsel is presumed competent, and

that presumption must be overcome by applying the *Strickland* test. *Ramos v. Weber*, 2000 SD 111, ¶ 12, 616 N.W.2d 88, 92.

[¶ 17.] Ice asserts that his trial counsel was ineffective because he failed to voir dire prospective jurors regarding issues of racial prejudice. While the habeas court determined that "[trial counsel] should have voir dired the jury regarding any racial prejudices while it was [his] turn to voir dire the jury," "[t]his error was properly erased by further voir dire" by the prosecution and the defense. While their racial prejudice inquiries were not extensive, both prosecution and defense counsel questioned the prospective jurors about racial issues. The prosecution followed up his initial inquiries with a question to the entire jury pool on whether racial prejudice would affect their ability to be fair and impartial. Ice's trial counsel then addressed the issue of racial prejudice with one of the prospective jurors originally questioned by the prosecution and she was removed for cause.

[¶ 18.] "In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial." *Sund*, 1998 SD 123 at ¶ 14, 588 N.W.2d at 225 (quoting *Loop v. Class*, 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191) (additional citations omitted). Ice has failed to establish that the trial court's determination was clearly erroneous.

[¶ 19.] **3. WHETHER THE DECISION TO TESTIFY AT TRIAL WAS A DECISION MADE BY ICE AND HIS COUNSEL OR BY COUNSEL ALONE, THEREBY DENYING ICE EFFECTIVE ASSISTANCE OF COUNSEL.**

[¶ 20.] Ice asserts that his counsel deprived him of the right to testify. Ice argues that, had he testified at trial as he had desired, it is probable that the outcome of the trial would have been different. During the habeas proceeding, however, Ice's trial counsel testified that he and Ice discussed whether Ice would testify in his own behalf throughout the course of trial preparation and the trial itself. Ice's counsel indicated that he and his client had weighed the pros and cons of Ice testifying and reached a mutual agreement that Ice would not testify.

[¶ 21.] The habeas court determined that "Mr. Ice not having testified was not a direct result of any coercion by Mr. Ice's defense counsel [ ], but rather a mutual decision between Mr. Ice and [his trial counsel]." Ice has failed to make a showing sufficient to overcome his trial counsel's testimony that his failure to testify at trial was a mutual agreement between attorney and client.

[¶ 22.] **4. WHETHER ICE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO THE CONTINUATION OF JURY DELIBERATIONS LATE INTO THE EVENING.**

[¶ 23.] Ice contends that he was denied effective assistance of counsel when his trial counsel agreed to the trial court's decision to have the jury continue its deliberations rather than moving for a mistrial. Under *Strickland*, Ice must show that his counsel's performance was so deficient as to result in prejudice. *Rodriguez*, 2000 SD 128 at ¶ 29, 617 N.W.2d at 142. Furthermore, trial strategy cannot be used as a basis for establishing constitutionally deficient assistance. *Boykin*, 471 N.W.2d at 168–69.

[¶ 24.] Ice and his trial counsel believed that the jury's inability to reach a

decision on aggravated assault was a positive sign in their favor and, as a matter of strategy, believed that the jury should be instructed to continue its deliberations. The habeas court determined that "it was not error for defense counsel not to request a mistrial after a note came back from the jury. The [habeas court] feels that it may have been [incompetence] to not send the note back to the jury and for the jury to continue their deliberations." Ice has failed to make a sufficient showing to establish that the habeas court's finding is clearly erroneous.

[¶ 25.] **5. WHETHER ICE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO THE PROSECUTION'S CLOSING ARGUMENT.**

[¶ 26.] Ice contends that he was denied effective assistance when his counsel did not object to the prosecution's use of Jerred Murner's testimony that Murner had been stabbed during the altercation in its closing argument. Ice contends that because he was not charged with assaulting Murner, this evidence was overly prejudicial.

[¶ 27.] During the habeas proceeding, Ice's trial counsel testified that he did not believe that the prosecution's use of Murner's testimony was objectionable. Rather, he believed that it aided in Ice's defense because a witness for Ice claimed he did the stabbing. Again, it is strongly presumed that counsel's performance is adequate and counsel's trial strategy cannot later be used to form the basis of a claim of error. The habeas court concluded that "there was no 404(b) evidence improperly brought into this trial" and that "it was res gestae and [was] perfectly admissible evidence." Ice has failed to make a showing sufficient to establish that the habeas court's finding was clearly erroneous.

[¶ 28.] Ultimately, the habeas court determined that:

> there is no evidence defense counsel was not functioning as counsel guaranteed by the Sixth Amendment, and that the defendant did not show that the deficient performance prejudiced the defense by showing the counsel's errors were so serious as to deprive the defendant of a fair trial, the [c]ourt cannot find that in this case.

Ice has failed to show that the trial court's findings of fact and conclusions of law are clearly erroneous and we affirm the denial of habeas corpus relief.

[¶ 29.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and, GORS, Acting Justice, concur.