2002 SD 149

**Martin RANDALL, Petitioner and Appellant,**

v.

**Douglas WEBER, Respondent and Appellee.**

**No. 22248.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 8, 2002.

Decided Dec. 4, 2002.

John R. Murphy, Rapid City, Attorney for appellant.

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, Attorneys for appellee.

PER CURIAM.

[¶1.] Martin Randall (petitioner) was convicted of aggravated assault for the vicious beating of Leighton Rich with a baseball bat. Petitioner is currently serving a fifteen-year prison sentence in the South Dakota State Penitentiary. Through a writ of habeas corpus, petitioner asserts that his conviction was obtained in violation of his constitutional right to effective assistance of counsel. We affirm.

FACTS AND PROCEDURE

[¶2.] On December 22, 1996, Rich was at a Rapid City motel room with three

friends. At some point during the evening four other individuals came to the room: Petitioner; his brother, Thomas Randall; Ardene Pawnee Leggins; and, Butter Mouseaux. An altercation ensued and petitioner, his brother and Mouseaux left the motel room. The three men then returned and Rich was beaten with a baseball bat and tire iron. Rich suffered severe injuries including a fractured skull and brain damage. Petitioner was charged with aggravated assault for his role in the altercation; specifically, he was alleged to have hit the victim with the baseball bat. Initially, petitioner was tried alone because of a statement he made that was admissible against him but not his brother. Shortly before the first trial petitioner's counsel, Timothy Rensch, learned that Mouseaux had bragged to another person, Ken Chapman, that he had hit Rich with the bat.[1] Rensch attempted to introduce this statement through Chapman as a declaration against penal interest. The trial court found the statement inadmissible: defense counsel had not been able to demonstrate that Mouseaux was unavailable, and the trustworthiness of the statement had not been sufficiently shown. SDCL 19–16–32 (Rule 804(b)(3)). Proceeding without the admission of this hearsay statement, petitioner's first trial resulted in a hung jury.

[¶ 3.] Petitioner was then tried a second time; however, his trial was joined with that of his brother, Thomas. Significantly, at the second trial the State added Leggins as a witness, who was present at the time of the incident but had previously been unavailable. State also relied on two other eyewitness statements, including the victim's, that identified petitioner as the assailant with the bat.[2] In the second trial, petitioner's counsel Rensch, did not attempt to introduce the out of court statement from Mouseaux to Chapman. Petitioner was convicted following his second trial. He asserts that the failure of his counsel to present this hearsay statement during the second trial constituted ineffective assistance of counsel in violation of both state and federal constitutional guarantees.

## ISSUE

[¶ 4.] **Was counsel ineffective for failing to offer into evidence the hearsay statement.**

## DISCUSSION

■■■ [¶ 5.] Ineffective assistance of counsel is a mixed question of fact and law upon which this Court can substitute its own judgment on whether counsel's representation was ineffective. *See Lykken v. Class,* 1997 SD 29, ¶ 6, 561 N.W.2d 302, 304. In determining whether a defendant suffered from ineffective assistance of counsel, this Court has adopted the two prong test from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). Those two prongs are: (1) whether trial counsel made errors that were so serious that he was not functioning as counsel guaranteed by the constitution; and, (2) whether those errors seriously prejudiced the defendant to the extent that they deprived him of a fair trial.

Relying on *Strickland,* [the Court in] *Woods v. Solem,* 405 N.W.2d 59, 61 (S.D. 1987), held that prejudice exists when there is a reasonable probability that, but for counsel's unprofessional errors, the proceeding would have been different. It is not enough for the petitioner

---

1. Neither Mouseaux nor Chapman testified at the habeas hearing.

2. The eyewitnesses were all subject to credibility attacks based on prior inconsistent statements identifying the assailants.

to show that the verdict would have been different, he must show 'that the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Fast Horse v. Leapley*, 521 N.W.2d 102, 104 (S.D.1994). *See also Mitchell v. Class*, 524 N.W.2d 860, 862 (S.D.1994); *Luna v. Solem*, 411 N.W.2d 656, 658 (S.D.1987).

[¶ 6.] Effective assistance of counsel is not equated with a successful result. *Jenner v. Leapley*, 521 N.W.2d 422, 425 (S.D.1994); *State v. McBride*, 296 N.W.2d 551, 554 (S.D.1980). This Court presumes that an attorney is competent until a showing to the contrary is made, so a petitioner alleging ineffective assistance of counsel carries a heavy burden. *Lykken*, 1997 SD 29 at ¶ 20, 561 N.W.2d at 307; *State v. Walker*, 287 N.W.2d 705, 706 (S.D. 1980).

Further, there is a strong presumption that counsel's performance falls within the wide range of professional assistance and the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Bradley v. Weber*, 1999 SD 68, ¶ 19, 595 N.W.2d 615, 621.

[¶ 7.] It is well settled that "[i]n reviewing trial counsel's performance, it is not this Court's function to second guess the decisions of experienced trial attorneys regarding matters of trial tactics unless the record shows that counsel failed to investigate and consider possible defenses and to exercise their good faith judgment thereon." *Sprik v. Class*, 1997 SD 134, ¶ 24, 572 N.W.2d 824, 829. The

determination does not rest on whether this Court finds the tactics or strategy employed to be the most advantageous but, instead, whether counsel satisfied the *Strickland* standard of competence. In reviewing whether counsel acted reasonably we analyze counsel's performance in light of the circumstances then existing. Neither the result reached nor second-guessing with the benefit of hindsight determine the reasonableness of counsel's performance.

While this court will not compare counsel's performance to that of some idealized "super-lawyer" and will respect the integrity of counsel's decision in choosing a particular strategy, these considerations must be balanced with the need to insure that counsel's performance was within the realm of competence required of members of the profession.

*Roden v. Solem*, 431 N.W.2d 665, 667 n. 1 (S.D.1988). "An attorney must make a reasonable investigation and must make reasonable decisions to forego particular investigations." *In re Application of Deserly*, 507 N.W.2d 905, 907 (S.D.1993). A difference in trial tactics does not amount to ineffective assistance of counsel. *Fast Horse*, 521 N.W.2d at 106.

[¶ 8.] "No two trial lawyers approach the same case from the same perspective, nor do they always develop the same trial strategy; thus, what to one appears to be sound, may to another appear unwise. A reviewing court must always be alert to distinctions between disagreement over tactic and valid complaints of inadequate counsel." *Myrick v. Maschner*, 799 F.2d 642, 647 (10thCir.1986). "Furthermore, trial strategy cannot be used as a basis for establishing constitutionally deficient counsel." *Ice v. Weber*, 2002 SD 4, ¶ 23, 638 N.W.2d 557, 562. Petitioner must "show more than that the trial strategy of the defense counsel back-

fired or that another attorney would have prepared and tried the case in a different manner." *Knecht v. Weber,* 2002 SD 21, ¶ 21, 640 N.W.2d 491, 500.

▮ [¶ 9.] The facts demonstrate that defense counsel was both aware of and had attempted to introduce this statement at the first trial. In this regard, counsel did investigate and discover this statement and made a conscious decision not to introduce the same. *Compare Hadley v. Groose,* 97 F.3d 1131, 1136 (8th Cir.1996) (granting habeas relief for failing to investigate and present exculpatory evidence). Petitioner now challenges counsel's decision not to attempt to introduce the statement again at the second trial after properly remedying any problems with its admissibility.[3] Instructively, defense counsel testified:

> In the first trial it played into my theory of defense because Lisa Randall (witness) said whoever threw the beer was the one who hit [Rich] with the baseball bat. So I wanted to tie her down and argue to the jury that she said [Mouseaux] threw the beer can, so he had to have been the one who hit [Rich] with the baseball bat, and because of that, [petitioner] shouldn't be convicted of this offense.

Whereas, to the contrary:

> At the time of the second trial, that wasn't really available. That wasn't really something I could do. Here's the reason. In the first trial they didn't have the person named [Leggins] to testify. He was an eyewitness. In the second trial they had [Leggins] testifying. And he put [Mouseaux] there. He put them all there and he put the Randall boys clubbing [Rich] over the head.
>
> After I've got him putting [Mouseaux] there and making this all one act, it's kind of combined so to speak, the presence of [Mouseaux] I think at that second trial would have been something that would have taken away my ability to argue that there was doubt as to these identifications, and it would have put the Randall boys in a situation of being aiders and abettors and it would have weakened my strongest argument. And the strongest argument on the case was hey; you don't know really what happened here, you don't know who did it. These people say somebody else did it in the beginning. The physical description that Lisa Randall and the other witnesses provided in the beginning of five-foot eleven totally and completely excludes [petitioner] because he was the biggest guy in the courtroom. He was six-foot five. He was much heavier than they previously stated when they were witnesses.

Additionally, defense counsel believed there were facts showing that Leggins may have been involved somehow and therefore "wanted the jury to draw their own conclusion that the perpetrator in this case was [Leggins]. And so the presence of [Mouseaux] would have hurt that."

[¶ 10.] We have recognized that "the selection of a defense is a trial strategy which this Court will seldom reevaluate." *Sprik,* 1997 SD 134 at ¶ 32, 572 N.W.2d at 831. In this case, the addition of Leggins as an eyewitness bolstered State's case. The decision not to present this hearsay witness was trial strategy. The record reveals that counsel considered and rejected the course the petitioner now asserts as

---

**3.** In analyzing Petitioner's claim we assume this testimony would have been admissible in the second trial.

appropriate: "Looking back on it and reading the transcript again, the doubt that was created by the misidentifications was a lot better defense than trying to utilize a de facto third-party perpetrator defense." The introduction of a competing theory offered by a hearsay witness could have weakened defense counsel's attempts to challenge the identification and the attempt to portray Leggins as the possible assailant.

[¶ 11.] As recognized by the habeas court, defense counsel is an experienced attorney and made a decision concerning trial strategy. Counsel's decision not to corroborate the testimony of prosecution witnesses by offering this statement, the same witnesses that counsel intended to challenge as unreliable to thwart their identification of petitioner, was reasonable. *See e.g., Tosh v. Lockhart,* 879 F.2d 412, 414 (8th Cir.1989) ("[T]he decision not to use alibi testimony may reflect the reasonable exercise of judgment in view of the attorney's concern that the testimony would be conflicting."). This is particularly so in light of the fact that all the eyewitnesses had previously given inconsistent identifications of the assailants.

[¶ 12.] This tactical decision was not ineffective assistance of counsel and we affirm the denial of habeas corpus relief.

[¶ 13.] Affirmed.

[¶ 14.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and ZINTER, Justices, and AMUNDSON, Retired Justice, participating.

[¶ 15.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.